MELVIN J. LONG, Plaintiff and Appellant, *v.* IRENE PAWLOWSKI, H. S. DOWNING, et al., Defendants and Respondents.

No. 9302.
Submitted March 1, 1957.   Decided March 7, 1957.
307 Pac. (2d) 1079.

(91)

Mr. Hugh J. Lemire, Miles City, for appellant.

Mr. Leif Erickson, Helena, Messrs. Hoover and Hoover, Circle, Messrs. Coleman, Jameson & Lamey, Billings, for respondents.

Mr. Lemire and Mr. Cale Crowley argued orally.

MR. JUSTICE CASTLES:

This is a suit to quiet title to certain land in McCone County.

The plaintiff was the original owner and patentee of the land involved by recorded patent. He was last seen in the vicinity in the year 1922. He permitted taxes levied and assessed to him on the land involved to go delinquent in 1925 and paid no taxes subsequently assessed. He was never assessed taxes after 1930. Notices of applications for tax deeds were mailed to him to his out-of-state address in 1930 and the registry return receipts were signed by Mrs. Melvin J. Long.

McCone County was issued tax deeds to the land in 1930. The two tax deeds involved were recorded in 1930. On March 8, 1940, McCone County leased the land to Leonard Pawlowski, husband of defendant, Irene Pawlowski, and in the same year, on August 5, 1940, McCone County entered into written contracts to convey the land to defendant, Irene Pawlowski. Subsequently, on February 8, 1944, and March 5, 1945, quitclaim deeds to the property were issued by McCone County to defendant, Irene Pawlowski. Taxes during the years 1941 through 1952 were levied and assessed to defendant, Irene Pawlowski, and were paid. This action was commenced on September 12, 1951.

The complaint alleged plaintiff was the owner of the property and that the defendants claimed title thereto. The answer of defendant, Irene Pawlowski, denied this and as a separate defense alleged that she was the owner and occupant of said

premises by reason of said tax deeds, contracts and quitclaim deeds from McCone County and by reason of adverse possession for the statutory period of ten years. Defendant Pawlowski also set up in her answer the defense of laches and abandonment.

Trial was had by the court with a jury in an advisory capacity. Written interrogatories as to the facts were answered by the jury as follows:

"1. Q. Do you find from the evidence that defendant Irene Pawlowski, either personally or through agents, employees, or representatives, entered into the possession and control of the lands involved prior to September 12, 1941? A. Yes.

"2. Q. If your answer to question number 1 was yes, do you find that such entry was made under and by virtue of a recorded deed of conveyance to McCone County and written contracts whereby McCone County agreed to convey to Irene Pawlowski? A. Yes.

"3. Q. Do you find that the land has been improved, or protected by a substantial enclosure, or used for the purpose of husbandry or pasturage, or for the ordinary use of defendant Irene Pawlowski, either by Irene Pawlowski personally, or through agents, employees or representatives. A. Yes.

"4. Q. If your answer to question number 3 was yes, do you further find that such has been continuous for each year since the time of first entry during the regular and normal season for such use? A. Yes.

"5. Q. If your answer to question number 4 was yes, was such use by Irene Pawlowski, either personally or through her agents, employees or representatives, actual, visible, exclusive, hostile throughout that period? A. Yes.

"6. Q. Did Irene Pawlowski, either personally, or through her agents, employees, or representatives pay all taxes legally levied and assessed upon said land during that period? A. Yes.

"7. Q. Did Irene Pawlowski, either personally or through her agents, employees or representatives, make improvements on the lands? A. Yes.

"8. Q. If your answer to question number 8 was yes, did such improvements increase the value and usability of such lands? A. Yes.

"9. Q. Do you find under all the circumstances shown by the evidence that Melvin J. Long delayed for an unreasonable length of time in asserting his present claim to these lands? A. Yes.

"10. Q. If your answer to question number 9 was yes, has Melvin J. Long offered any reasonable explanation or excuse for such delay? A. No.

"11. Q. Did the defendant, Irene Pawlowski, enter into the control of the lands involved? A. Yes.

"12. Q. If your answer to question number 11 is yes, when did the defendant Irene Pawlowski enter into control of the said lands? A. Aug. 5, 1940."

The court adopted the jury's findings and judgment was entered for the defendant Pawlowski.

Plaintiff and appellant herein specified as error five grounds, all going to the findings of the court and his conclusions of law, to the effect that defendant Pawlowski was the owner of the land by adverse possession.

Defendant Pawlowski, respondent herein, specified as error the trial court's refusal to find that plaintiff was estopped and barred from making any claim to the land by reason of laches and also that the plaintiff had abandoned said land.

The court found that the form of the two tax deeds conformed to the form required by law, but that the deeds were void due to failure of required publication and posting as required by law.

Plaintiff argues at length that the tax deeds were void and that they would not operate to give defendant color of title within the meaning of R.C.M. 1947, section 93-2508. The county took tax deeds in 1940, and then leased the land to defendant's husband and contracted to deed to defendant in 1940. Plaintiff contends that defendant cannot show good faith by relying upon the contracts for deeds and quitclaim deeds.

As was said in Hentzy v. Mandan Loan & Investment Co., Mont,. 286, Pac. (2d) 325, 327:

"* * * here the instrument in writing upon which adverse possession was founded is a tax deed running to the county and hence is a written instrument which purports to be a conveyance of the property. The possession taken by the tenant and vendee of the county was under the law possession by the county under its tax title. Sullivan v. Neel, 105 Mont. 253, 73 Pac. (2d) 206.''

And further from that case, the court said:

"This court has held that a tax deed though void is ample as color of title so as to sustain the claim of adverse possession. See Morrison v. Linn, 50 Mont. 396, 147 Pac. 166; Horsky v. McKennan, 53 Mont. 50, 162 Pac. 376. To the same effect by necessary inference is the case of Fitschen Brothers Com. Co. v. Noyes' Estate, 76 Mont. 175, 246 Pac. 773; and Pritchard Petroleum Co. v. Farmers Co-op. Oil & Sup. Co., 121 Mont. 1, 190 Pac. (2d) 55.''

As to the evidence of color of title based upon a contract for the sale of land it was stated further in the Hentzy case that:

"Here it was shown that after the county obtained the tax deed it leased the land in 1938 to predecessors in interest of the plaintiff. The county then entered into a contract for the sale of the land in February 1942 to Daniel Killen, and later and in 1943 deeded the property to him by quitclaim deed. He in turn in 1944 gave a quitclaim deed to plaintiff. Thus it is shown that the County of Dawson had color of title to the land in question from December 30, 1930, the date it received the tax deed, until in 1943 when the county deeded the property to Daniel Killen. Furthermore, contrary to the contention of appellants, the rule is that color of title may be evidenced by a contract for the sale of land. 1 Am. Jur., Adverse Possession, section 196, page 901; 2 C.J.S., Adverse Possession, section 130b, p. 688. An instrument which purports to convey the land or the right to its possession is sufficient color of title as a

basis for adverse possession if the claim is made in good faith. Fitschen Brothers Com. Co. v. Noyes' Estate, supra, and Sullivan v. Neel, supra.''

Under the aforementioned Hentzy case, the defendant clearly had the required color of title under the tax deeds to the county and the contracts for deeds. Was there, then, a sufficient showing of adverse possession for the required period of time?

The answer is in the affirmative and both the jury and the █ court so found.

Defendant, Irene Pawlowski, and her husband, Leonard Pawlowski, have been jointly engaged in farming and stock raising since 1939, their primary business being sheep ranching. Their home ranch was about twenty-five miles south of the land involved in this case. The home ranch was the base of operations and wintering of the sheep was done there. They have utilized the land involved in this suit, as well as adjacent lands, as a ranch unit during the grazing season which extends for a period of five to six months, from spring to fall, depending on the weather. Defendant and her husband first looked at the land in 1939, leased it from the county in 1940, and put a band of sheep on it in July 1941 and kept them there until that fall, trailing them back to the home ranch for wintering. Sheep were lambed and pastured on the land involved each grazing season thereafter except in 1948 when cattle were pastured. In addition, in 1943, three dams were constructed on the land. Again in 1944, a large dam was constructed. In 1947, four and one-half miles of fence were constructed. Defendant and her husband leased other adjacent lands too, but the land involved contained the only water facilities and was therefore the base of lambing and grazing operations.

During all this period of time, from 1940 on, Pawlowski had the only sheep ranch in the county; their sheep were branded ''P'' which is a distinct, exclusive brand. The land involved became commonly known as the Pawlowski ranch. Once the sheep had pastured the land, distinct telltale marks were left; the sheep wagons and sheep were visible for miles in the open

prairie country involved. Pawlowski also eradicated prairie dogs and predators and drove off other stock which might stray onto the land; a herder, supplied with a horse, being present at all times during the grazing season. Numerous others, including the Pawlowski family, were working on the land and traveling to and fro.

The jury and the trial court were warranted in finding that the defendant made a sufficient showing of adverse possession from her entry upon the land in July 1941. There is hardly any more that an adverse possessor could do in open range country to notify all other persons to "Keep your livestock from this land, I claim it, it is mine, I own it."

Counsel for defendant Pawlowski have pleaded a defense of laches and abandonment. They strongly urged this court to make a declaration concerning the doctrines. However, it is not necessary to do so in this case under the facts.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY, ANGSTMAN and ADAIR, concur.