WILLIAM H. TOTMAN & another[1] *vs.* JOHN G. MALLOY
& another.[2]

Suffolk. January 3, 2000. - March 30, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Adverse Possession and Prescription. Real Property,* Adverse possession.

This court declined to recognize a presumption or inference, for purposes of
defeating a claim of title by adverse possession, of permissive use among
"close" family members, and stated that the better approach is to examine
whether the use of the land is actual, open, and exclusive for a period of
twenty years, in light of the circumstances of each particular set of claim-
ants. [146-148]

CIVIL ACTION commenced in the Land Court Department on
May 5, 1995.

The case was heard by *Mark V. Green,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Donald J. Kaiser* for the plaintiffs.

*William F. M. Hicks* for the defendants.

IRELAND, J. The plaintiffs brought an action to claim title to
disputed land by adverse possession. A Land Court judge, ap-
plying a presumption of permissive use among family members,
held that the plaintiffs had failed to establish the necessary ele-
ments of adverse possession. The plaintiffs appealed and we
transferred the case to this court on our own motion. We
conclude that the Land Court should not have applied such a
presumption. We therefore vacate the judgment and remand the
case for proceedings consistent with this opinion.

We accept the judge's findings of fact unless they are clearly
erroneous. See Mass. R. Civ. P. 52 (a), as amended, 423 Mass.
1402 (1996); *Kendall* v. *Selvaggio,* 413 Mass. 619, 620 (1992);

[1]Mary J. Totman.
[2]Patricia H. Malloy.

*Secretary of Envtl. Affairs* v. *Massachusetts Port Auth.*, 366 Mass. 755, 774 (1975). In 1952, Caroline G. Totman (Caroline) conveyed one of the two parcels of land at issue to the plaintiffs, her son and daughter-in-law, William and Mary Totman. Caroline continued to live in her home on the other parcel (lot A) until 1989, when she conveyed substantially all of it to Patrick M. Totman, the plaintiffs' son. See Appendix. In 1992, Patrick and his wife Joann conveyed the parcel to the defendants, John and Patricia Malloy.

The two parcels of land, located in Stoughton, abut each other, and the plaintiffs' property (Totman parcel) is north and east of the defendants' property (Malloy parcel). See Appendix. The disputed land consists of a beach area next to a pond located west of the Totman parcel, and a strip of land with a stream along the southern boundary of the Totman parcel. At the time of the 1989 conveyance to Patrick and Joann Totman, the ownership of the stream or beach area was not discussed.

Between 1952 and 1989, William Totman performed maintenance on the stream, including work on the stream bed and banks, and mowing the grass on both sides of the stream. He also built a dam across a portion of the stream, and a footbridge across the stream to allow his children to walk across to Caroline's house. He cleaned the beach along the easterly side of the pond, refreshed the sand from time to time, maintained and improved a dock that served the beach, and placed a trailer alongside the beach that he and his family used to host beach parties.

During the spring of 1993, shortly after acquiring their land, the defendants engaged a surveyor to stake its boundaries and insert concrete corner bounds.[3] The plaintiffs prevented the installation of the concrete bounds within the disputed area, and on May 5, 1995, brought this action to claim title to the land by adverse possession and to establish a prescriptive easement to use the pond and beach area.

The Land Court judge, ruling in favor of the defendants, stated that "[n]one of the acts performed by plaintiffs on the disputed area was sufficiently hostile to overcome the inference of permissive use grounded in the close family relationship." The judge relied primarily on one portion of 2 C.J.S. Adverse

---

[3]The parties do not dispute that, until the defendants acquired their parcel and had the land surveyed, the land in dispute was believed to be part of the Totman parcel and assumed to be bounded by the stream.

Possession § 128 (1972), which states that, "[a]s between parties sustaining parental and filial relations, the possession of the land of the one by the other is presumptively permissive or amicable, and to make such a possession adverse, there must be some open assertion of hostile title." On appeal, the plaintiffs argue that the Land Court judge erred in applying a presumption of permissive use among family members.

A party claiming title to land through adverse possession must establish actual, open, exclusive, and nonpermissive use for a continuous period of twenty years. See *Mendonca* v. *Cities Serv. Oil Co. of Pa.*, 354 Mass. 323, 326 (1968); *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964); *Duff* v. *Leary*, 146 Mass. 533, 540 (1888). The guiding principle behind the elements of adverse possession is not to ascertain the intent or state of mind of the adverse claimant, but rather to provide notice to the true owner, allowing for the legal vindication of property rights. See *Kendall* v. *Selvaggio*, *supra* at 623-624; *Ottavia* v. *Savarese*, 338 Mass. 330, 333 (1959). The only element of adverse possession that the Land Court addressed was that of nonpermissive use, which has been referred to interchangeably in the case law as "hostile," "adverse," or "under a claim of right." The essence of nonpermissive use is lack of consent from the true owner. See *Ottavia* v. *Savarese*, *supra* at 333-334.

Whether a use is nonpermissive depends on many circumstances, including the character of the land, who benefited from the use of the land, the way the land was held and maintained, and the nature of the individual relationship between the parties claiming ownership. See, e.g., *Kendall* v. *Selvaggio*, *supra* at 624; *LaChance* v. *First Nat'l Bank & Trust Co.*, 301 Mass. 488, 490 (1938). Historically, the existence of a familial relationship between claimants has been a factor in determining whether possession of land is adverse, see *Duff* v. *Leary*, *supra* at 541-542 (occupation of house by niece permissive where uncle paid for repairs and insurance and maintained house for benefit of other relatives); *Silva* v. *Wimpenney*, 136 Mass. 253 (1884) (possession of land by minor children held to be permissive and not acquired by adverse possession when father was at sea and land used for benefit of children); *Hunt* v. *Hunt*, 3 Met. 175, 186 (1841) (where son lived on and managed farm on land owned by father, the court noted parent-child relationship in holding that son had not acquired title by adverse possession), but we have never applied a presumption or inference of permis-

sive use arising from a familial relationship. See *Boutin* v. *Perreault*, 343 Mass. 329, 330 (1961) (period for adverse possession by son began to run against father); *Nickerson* v. *Nickerson*, 235 Mass. 348 (1920) (family members acquired property by adverse possession).

In light of our case law and the purposes behind the requirements for establishing adverse possession, we decline to create a presumption or inference of permissive use among "close" family members. Were we to recognize such a presumption, related claimants would be required to provide additional proof beyond that needed for similarly situated unrelated parties. Such a presumption would encourage related claimants to provide evidence of family strife, rewarding those who do by making it more likely that they be granted title by adverse possession. Moreover, such inquiry into "hostile" relationships within a family would necessarily require courts to evaluate a claimant's state of mind, an evaluation that has been eliminated from the elements of adverse possession. We have long held that the state of mind of a claimant is not relevant to a determination whether the possession of land is nonpermissive. See *Ottavia* v. *Savarese*, *supra* at 334. As we have stated, "mental attitude is irrelevant where acts import an adverse character to the use of the land. . . . [T]he possessor's actions and not his intent provide notice of nonpermissive use to the true owner." *Kendall* v. *Selvaggio*, *supra* at 624.

Further, such a presumption would be at odds with the principle expressed in both adverse possession and prescriptive easement cases that, where the use of the land is actual, open, and exclusive for a period of twenty years, the nonpermissiveness of the use may be inferred.[4] Finally, were we to create such a presumption, we would then have to determine what

---

[4]See *Flynn* v. *Korsack*, 343 Mass. 15, 18 (1961) ("the physical facts of entry and continued possession may themselves evidence an intent to occupy and to hold as of right sufficient in law to support the acquisition of rights by prescription"); *Ottavia* v. *Savarese*, 338 Mass. 330, 333 (1959), quoting 3 American Law of Property § 15.4, at 776-777 (A.J. Casner ed. 1952) ("The great majority of the cases establish convincingly that the . . . requirements of claim of title and of hostility of possession mean only that the possessor must use and enjoy the property continuously for the required period as the average owner would use it, *without the consent of the true owner* . . ."); *Tucker* v. *Poch*, 321 Mass. 321, 324 (1947) (applying rebuttable presumption regarding prescriptive easement); *LaChance* v. *First Nat'l Bank & Trust Co.*, 301 Mass. 488, 491 (1938) (noting that the "nature of [the] improvements [to the land], their location upon the land, and the length of the period during

constitutes a "close" family relationship. Rather than apply such a presumption or inference, the better approach, which we adopt today, is to examine the aforementioned factors in light of the circumstances of each particular set of claimants.

The defendants, citing *Tallent* v. *Barrett*, 598 S.W.2d 602, 606 (Mo. Ct. App. 1980), urge us to follow other jurisdictions that have recognized this presumption.[5] The facts of *Tallent* v. *Barrett, supra,* however, are significantly different from this case. There the court held that three sons who lived with their mother in her household until her death could not claim the land owned by their mother by adverse possession. The Missouri Court of Appeals explained that a "rightful owner cannot be deprived of title by possession of another if he is also in possession with the adverse claimant as joint possession is not adverse." *Id.* at 606, citing *Fiorella* v. *Jones*, 259 S.W. 782, 785

which [the improvements] were being made . . . were sufficient to warrant the inference that they were performed under a claim of right," in awarding title to claimants by adverse possession); *Truc* v. *Field*, 269 Mass. 524, 528-529 (1930) ("wherever there has been the use of an easement for twenty years unexplained, it will be presumed to be under a claim of right and adverse, and will be sufficient to establish title by prescription").

[5]See *Bellamy* v. *Shryock*, 211 Ark. 116, 122-123 (1947) (stronger evidence of hostility required to rebut presumption of permissive use where parent-child relationship between adverse claimants and true owner); *Kelly* v. *Mullin*, 159 Colo. 573, 577-578 (1966) ("strong proof" of hostility required where true owner is relative of claimants). See also *Matter of the Estate of Qualteri*, 757 P.2d 1093, 1095 (Colo. Ct. App. 1988) (court declines to adopt presumption of permissive use among family members, but holds that "strong proof" of hostility is required); *Mullan* v. *Bank of Pasco County*, 101 Fla. 1097, 1107 (1931) (possession by parent of child's land usually presumed permissive "subject to certain general exceptions" where family lived together as "homestead"); *Parker* v. *Beckwith*, 251 Mich. 434, 437 (1930) (father could not acquire title by adverse possession against daughter living in household with him during a portion of the time required to establish claim); *Tyler* v. *Wright*, 164 Mich. 606, 608 (1911) (close relationship of parent and child may raise presumption of permissive use, but relationship alone not conclusive where no evidence of their friendly relationship); *O'Boyle* v. *McHugh*, 66 Minn. 390, 391 (1896) (possession and cultivation of land by mother not enough to rebut presumption of permissive use vested in relationship with children); *Chase* v. *Lavelle*, 105 Neb. 796, 801 (1921) (use of land by child presumptively permissive); *Demmitt* v. *McMillan*, 16 Ohio App. 3d 138, 141 (1984) (family relationship between parties imposes higher burden of proof on adverse claimant); *Fehl* v. *Horst*, 256 Or. 518, 522 (1970) (possession of land presumed permissive where mother shared a household with daughter and son-in-law); *Harlow* v. *Miller*, 147 Vt. 480, 482 (1986) (presumption that use is permissive and amicable within family relationship "second ground" to support lower court's finding that possession not adverse).

(Mo. 1923). Additionally, many of the cases from other States recognizing such a presumption involve cotenants or minor children living with their parents for part or all of the required time period. The case before us, however, involves a parent and an adult son and daughter-in-law to whom title had been conveyed. They were not living as cotenants but rather as neighbors on abutting parcels. While evidence of a familial relationship may sometimes assist the fact finder in determining the individual nature of the relationship between the claimants or to whose benefit the land was used, standing alone a familial relationship neither puts an end to the inquiry regarding permissive use nor shifts the burden of proof.

For all the reasons stated above, we remand the case to the Land Court for further proceedings consistent with this opinion.

*So ordered.*